Craig R. Mariger (USB #2083)
Lewis M. Francis (USB #6545)
Elizabeth M. Butler (USB #13658)
Christian A. Vanderhooft (USB #17335)
**JONES, WALDO, HOLBROOK & McDONOUGH, P.C.**
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Telephone:  801-521-3200
cmariger@joneswaldo.com
lfrancis@joneswaldo.com
lbutler@joneswaldo.com
cvanderhooft@joneswaldo.com

*Attorneys for Petitioners Nu Skin Enterprises, Inc.
and Pharmanex, LLC*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| NU SKIN ENTERPRISES, INC., a Delaware corporation, and PHARMANEX, LLC, a Delaware Limited Liability Company,<br><br>Petitioners,<br>v.<br><br>EARNEST L. RAAB, D.C., d/b/a SUCCESS TO SIGNIFICANCE LLC, an administratively dissolved Washington LLC; MICHAEL ULRICK; LARRY C. WIEBER and ROSE WIEBER, individually and d/b/a TEST FOR NUTRITION OF WASHINGTON, LLC, a Washington LLC; MAX and DEBRA ROBBINS; TONI RAGSDALE, individually and d/b/a RAGSDALE AND COMPANY, LLC, an Oklahoma LLC; WAYNE MATECKI, LAC, and AMY L. MATECKI, M.D., individually and d/b/a DR. AMY'S INTEGRATIVE MEDICINE, INC., a California corporation,<br><br>Respondents. | **PETITIONERS' MOTION TO COMPEL ARBITRATION AND ENJOIN RESPONDENTS' PROSECUTION OF STATE COURT ACTION**<br><br>Case No.: 2:21-cv-00709-RJS<br><br>Judge: Robert J. Shelby |

Petitioners Nu Skin Enterprises, Inc. ("NSE"), and Pharmanex, LLC ("Pharmanex") (collectively, "Petitioners"), by and through their undersigned counsel, hereby move to compel respondents Earnest L. Raab, D.C., d/b/a Success To Significance LLC; Michael Ulrick; Larry C. Wieber and Rose Wieber, individually and d/b/a Test For Nutrition of Washington, LLC; Max and Debra Robbins; Toni Ragsdale, individually and d/b/a Ragsdale & Company LLC; Wayne Matecki, LAC; and Amy L. Matecki, M.D., individually and d/b/a Dr. Amy's Integrative Medicine, Inc. (collectively, "Respondents") to arbitrate all claims asserted in their Washington Complaint (the "Washington Complaint"), and to enjoin Respondents from further prosecuting their Washington state court action (the "Washington Action") pending completion of such arbitration.

## INTRODUCTION AND RELIEF REQUESTED

Respondents, all but one of whom are current Nu Skin distributors, recently filed the Washington Complaint against Petitioners and other Nu Skin distributors, alleging that they have been harmed by Nu Skin's purported business activities and business structure. For the reasons stated below, this Court should enter an order: (1) compelling Respondents to arbitrate all the claims in the Washington Complaint as required by the broad and compulsory arbitration provisions in their respective Nu Skin contracts, and (2) enjoining Respondents from taking any further action in the Washington Action until a final order has been issued in the arbitration.

## RELEVANT FACTS

1.  On November 15, 2021, Respondents filed the Washington Complaint, in which they assert various claims against Petitioners and the other named defendants, including under the federal Racketeer Influence and Corrupt Organizations Act. All of Respondents claims arise out

of their contractual relationship with Nu Skin, and/or are otherwise related to their Nu Skin distributorships. *See* Washington Complaint, at <u>Exhibit A</u> to Petition to Compel Arbitration and Enjoin Respondents Prosecution of State Court Action ("Petition"), filed herewith.

2. Petitioners NSE and Pharmanex are Nu Skin affiliate companies. *See* Declaration of Brian Muir, ¶¶ 7–12, 41–42, filed concurrently herewith ("Muir Decl.").

3. All of the other named defendants in the Washington Complaint are current or former Nu Skin distributors (the "Distributor Defendants"). (Muir Decl. ¶ 16.)

4. Respondents Raab, Ulrick, Max Robbins, Ragsdale, the Wiebers, and the Mateckis each entered into Nu Skin Distributor Agreements (the "Distributor Agreements") that contained a specific arbitration provision that states, in relevant part:

> THIS CONTRACT IS SUBJECT TO ARBITRATION. UTAH WILL BE THE EXCLUSIVE VENUE FOR ARBITRATION OR ANY OTHER RESOLUTION OF ANY DISPUTES ARISING UNDER OR RELATED TO THIS CONTRACT.
> . . .
>
> I agree that any Dispute will be resolved and settled in accordance with and pursuant to the terms and conditions of this Contract, and by the rules and procedures set forth in Chapter 7 (Arbitration) of the Policies and Procedures . . .. The arbitration proceeding will be conducted in Salt Lake City, Utah.

(Muir Decl. ¶¶ 22–29, 56 and <u>Exhibits 3</u>–<u>10</u>, <u>19</u>, and <u>20</u> thereto, Section D.)

5. Per the Nu Skin Distributor Agreements, an arbitrable "Dispute" is defined as:

> [A]ny and all past, present or future claims, disputes, causes of action or complaints, whether based in contract, tort, statute, law, product liability, equity, or any other cause of action, (1) arising under or related to this Contract, (ii) between other Distributors and me arising out of or related to a Distributorship, or our business relationship as independent contractors of the [sic] Nu Skin, (iii) between Nu Skin and me, (iv) related to Nu Skin or its past or present affiliated entities, their owners, directors, officers, employees, investors or vendors, (v) related to the Nu Skin Products, (vi) regarding Nu Skin's resolution of any other matter that impacts my Distributorship, or that arises out of or is related to the Company's business,

including my disagreement with Nu Skin's disciplinary actions or interpretations of the Contract.

*Id.*

6. In the Distributor Agreements, "Nu Skin" is defined to mean Nu Skin Enterprises United States, Inc. ("NSEUS"), Nu Skin International, Inc. ("NSI"), "and their affiliated companies." (Muir Decl. ¶ 30.)

7. Petitioner NSE owns and controls NSEUS and NSI and is, therefore, an "affiliated company." Similarly, Petitioner Pharmanex is wholly owned by NSI, is indirectly owned by NSE, and is therefore also an "affiliated company." (Muir Decl. ¶¶ 8–10, 41–42.)

8. The Nu Skin Distributor Agreements expressly incorporated Nu Skin's Policies & Procedures (the "Policies") as part of the parties' "Contract." Those Policies, consistent with the Distributor Agreements, require arbitration of all Disputes.

9. When Raab first signed Nu Skin Distributor Agreements in 2005 and 2007, he agreed to be subject to Nu Skin's 2001 Policies. As part of a 2011 settlement and a related Amended Distributor Agreement, Raab subsequently agreed to be subject to the 2010 Policies. (Muir Decl. ¶¶ 43–45, 49–58, 61 and Exhibits 13–14 and 16–17 thereto.)

10. Meanwhile, Respondents Ulrick, Max Robbins, Ragsdale, the Wiebers, and the Mateckis all agreed to be subject to the 2010 Policies when they signed their above-noted, respective Nu Skin Distributor Agreements. (Muir Decl. ¶ 32.)

11. Nu Skin updated its Policies in 2018. (Muir Decl. ¶ 19.) By continuing to act as Nu Skin distributors and to receive compensation from Nu Skin after receiving notice of the new Polices, Respondents became subject to the 2018 Policies as well. (Muir Decl. ¶ 20–21, 34.)

3

**12.** The 2001, 2010, and 2018 Policies all contain broad and valid arbitration provisions that require the arbitration of the claims alleged in the Washington Complaint. (Muir Decl. ¶¶ 36–38, 47 and <u>Exhibit 15</u> thereto (the "2001 Policies") at p. 18, § 30B; <u>Exhibit 11</u> thereto (the "2010 Policies") at p. 24–25, Ch. 7; and <u>Exhibit 12</u> thereto (the "2018 Policies") at p. 25–26, Ch. 7.)

**13.** The Nu Skin Policies require that arbitration be conducted before a single arbitrator, pursuant to the provisions of the Utah Uniform Arbitration Act, in Salt Lake City, Utah. (Muir Decl. ¶ 39, Ex. 19, 2010 Policies, p. 24, Ch. 7 § 6.1; Ex. 20, 2018 Policies, Ch. 7 § 6.1.)

**14.** So far as Nu Skin's records reveal, Respondent Debra Robbins did not sign a Distributor Agreement with Nu Skin, although her husband Max Robbins is a long-time Nu Distributor. (Muir Decl. ¶ 15.)

**15.** Respondents' claims in the Washington Complaint stem from their longstanding status as Nu Skin distributors. In particular, the Washington Complaint focuses on an alleged lack of profits from leasing Nu Skin scanners; insufficient customer service from Nu Skin's call center; alleged misrepresentations by the Health Care Professional Network Alliance regarding its affiliation with Nu Skin; Nu Skin's allegedly insufficient efforts to control the sale of Nu Skin products online; and alleged misrepresentations about Nu Skin made by other Nu Skin distributors. (Petition, Ex. A, Washington Complaint ¶¶ 4.1–4.109.)

**16.** All of Respondents' claims in the Washington Complaint, both against Petitioners and the Distributor Defendants, are contractually required to be arbitrated.

## STATEMENT OF LAW

To compel arbitration, the Court need only make two findings: (1) that a valid arbitration agreement exists, and (2) that Respondents' claims either fall within the scope of that agreement

or, alternatively, that the issue of scope should be resolved by the arbitrator.[1] *See* 9 U.S.C. § 2; *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280–81, 1292 (10th Cir. 2017).

The Federal Arbitration Act ("FAA") provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (*quoting* 9 U.S.C. § 2). If an agreement is valid and there is clear and unmistakable intent to arbitrate arbitrability, the court is obligated to "eschew consideration of the arbitrability of the claims and to grant the motion to compel arbitration . . . ." *Belnap,* 844 F.3d at 1291. If the court finds a valid agreement to arbitrate and does not find clear and unmistakable intent to arbitrate arbitrability, the court must determine whether the agreement encompasses the parties' dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). If the motion to compel is granted, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Courts apply ordinary state law contract principles "[w]hen deciding whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). So long as an arbitration clause is not itself invalid under "generally applicable contract defenses, such as fraud, duress, or unconscionability," it must be enforced according to its terms. *Concepcion,* 563 U.S. at 339. Any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration. *First Options of Chicago,* 514 U.S. at 945.

---

[1] This Court is the only one with proper venue to compel arbitration. *See Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1052–55 (10th Cir. 2006). Under 9 U.S.C. § 4, where, as here, the arbitration clause contains a choice of venue provision, only a court within that same district can enter an order compelling arbitration. *See id.; see also Kawasaki Heavy Indus., Ltd. v. Bombardier Rec. Prods., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011).

The Utah Uniform Arbitration Act similarly provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." Utah Code Ann. § 78B-11-107(1). It further provides that, in considering an arbitration provision, courts may decide only if: (1) the agreement to arbitrate exists, and (2) whether the controversy at issue is subject to the agreement to arbitrate. *Id*. § 78B-11-107(2). Once the Court determines that the parties' dispute falls within the general scope of an enforceable arbitration agreement, arbitration should be compelled, and the lawsuit should be stayed pending its completion. *Id*. §§ 78B-11-108(1), (6)–(7). From that point forward, it is for the arbitrator to decide if the conditions precedent for arbitration have been satisfied and whether the agreement to arbitrate is enforceable. *Id*. § 78B-11-107(3).

In addition, Utah law favors arbitration. *See Buzas Baseball v. Salt Lake Trappers*, 925 P.2d 941, 946 (Utah 1996) (the UUAA "reflects long-standing public policy favoring speedy and inexpensive methods of adjudicating disputes"); *Mariposa Exp., Inc. v. United Shipping Sols., LLC*, 295 P.3d 1173, 1177 (Utah Ct. App. 2013) (accord). All doubts, under Utah law, are resolved in favor of arbitration. *See Docutel Olivetti v. Dick Brady Systems, Inc*., 731 P.2d 475, 479 (Utah 1986); *Okwale v. Corinthian Colleges*, No. 1:14–cv–135–RJS, 2015 WL 730015, at *2 (D. Utah Feb. 19, 2015) (*citing Sanchez v. Nitro-Lift Tech., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014)).

## ARGUMENT

A. **Respondents Have Enforceable Arbitration Agreements with Nu Skin**

Every Respondent—except Debra Robbins, who is discussed below—signed a Distributor Agreement that explicitly requires arbitrating "any and all . . . disputes" that arise with Nu Skin,

6

its affiliates, or other distributors. (Muir Decl. ¶¶ 22–29, 43–45, 50–51, 56; Exs. 3–10, 13–14, 16–17, 19–20.) Respondents also agreed to be governed by Nu Skin's Policies, which contain similarly broad arbitration provisions. (Muir Decl. ¶¶ 36–38, 47; Ex. 15, 2001 Policies, p. 18, § 30B; Ex. 11, 2010 Policies, p. 24–25, Ch. 7; Ex. 12, 2018 Policies, p. 25–26, Ch. 7.) By virtue of the Distributor Agreements and their ongoing Nu Skin distributorship activities, Respondents are bound by these Policies. (Muir Decl. ¶¶ 20–21, 32, 34.) Because these provisions are valid, broad, and enforceable, Petitioners have satisfied the first prong of the arbitration inquiry.

**B.     Under the Arbitration Provisions, the Arbitrator Must Decide Arbitrability**

The Distributor Agreements require that "any and all . . . disputes . . . arising under or related to this Contract" be submitted to arbitration. (Muir Decl. Exs. 3–10, 19–20). Nu Skin's Policies similarly require that any dispute arising under or related to the Contract be arbitrated. (Muir Decl., Ex. 15, 2001 Policies, p. 18, § 30B; Ex. 11, 2010 Policies, p. 24, Ch. 7 § 3; Ex. 12, 2018 Policies, p. 25, Ch. 7 § 3.) In other words, any dispute about the Contract—including disputes about the scope of the arbitration provisions—are themselves subject to arbitration. *See Belnap*, 844 F.3d at 1280 ("[W]hen parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including whether their agreement covers a particular controversy.") (internal quotations omitted). Therefore, this Court can compel arbitration without further analyzing the scope of the provisions.[2]

---

[2] Respondents purport to challenge the enforceability of the arbitration provisions in the Washington Complaint. But this issue is also for the arbitrator to decide. *See Belnap*, 844 F.3d at 1280. In any event, such claims are without any legal or factual basis. As set forth herein, Respondents agreed to the arbitration provisions; and there is no issue of retroactivity. Also, there is no basis to conclude that the Distributor Agreements, or their arbitration provisions, are unconscionable. *See, e.g., Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998).

1770915.1

C. **In Any Event, All Claims Are Within the Scope of the Arbitration Agreements**

Even if the Court were to determine that the parties did not agree to arbitrate arbitrability, the Court should still conclude that Respondents' claims fall within the scope of the arbitration provisions. Per the allegations in the Washington Complaint, this dispute relates directly to Respondents' actions as Nu Skin distributors. Respondents' allegations involve their work as Nu Skin scanner operators, their attendance at Nu Skin events, their interactions with other Nu Skin distributors, and their competition from online retailers selling Nu Skin products. (Petition, Ex. A, Washington Complaint, ¶¶ 4.1–4.109.) All of Respondents' claims and allegations relate directly to their roles as Nu Skin distributors. The arbitration provisions in the Distributor Agreements and Policies broadly apply to any cause of action "arising under or related to this Contract." (Muir Decl., Exs. 3–10, 19–20; *see also* Ex. 15, 2001 Policies, p. 18, § 30B; Ex. 11, 2010 Policies, p. 24, Ch. 7 §§ 2–3; Ex. 12, 2018 Policies, p. 25, Ch. 7 §§ 2–3.) The Utah Court of Appeals has opined that such language is "the broadest language the parties could reasonably use to subject their disputes to arbitration." *Willow Creek Ass. of Grantsville, LLC v. Hy Barr Inc.*, 2021 UT App 116 at *14 (Utah Ct. App. Nov. 4, 2021). As a result, all of Respondents' claims in the Washington Complaint must be arbitrated.

The Nu Skin Distributor Agreements and Policies also explicitly require arbitration of disputes *between* distributors. (Muir Decl. Exs. 3–10, 19–20; *see also* Ex. 15, 2001 Policies, p. 18, § 30B; Ex. 11, 2010 Policies, p. 24, Ch. 7 §§ 2–3; Ex. 12, 2018 Policies, p. 25, Ch. 7 §§ 2–3.) *See also Wagner v. Clifton*, 62 P.3d 440, 443 (Utah 2002) (interpreting Nu Skin's Policies & Procedures and concluding that they created enforceable arbitration rights between Nu Skin distributors). As noted above, Respondents' Washington Complaint includes claims against both

Petitioners and the Distributor Defendants. Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Here, the "arbitration . . .provided for in such agreement" expressly requires arbitration for the claims against *both* Petitioners and the Distributor Defendants. Petitioners therefore request that the Court compel Respondents to arbitrate *all* claims in the Washington Complaint.

D.   **Debra Robbins is Required To Arbitrate By Nonsignatory Estoppel**

Unlike the other Respondents, Debra Robbins herself does not appear to have herself signed a Nu Skin Distributor Agreement, but she is the wife of a long-time Nu Skin distributor, Max Robbins. (Muir Decl. ¶ 15.) As a result, her claims must still be arbitrated under the doctrine of nonsignatory estoppel:

> [U]nder certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties. . . . The rationale behind this exception is that a nonsignatory should be estopped from avoiding arbitration when the nonsignatory seeks to benefit from some portions of the contract but avoid the arbitration provisions. . . . [One] variety of nonsignatory estoppel has been employed . . . when the nonsignatory sues the signatory on the agreement after receiving "direct benefits" but seeks to avoid arbitration.

*Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 989 (Utah 2006); *see also Inception Mining, Inc. v. Danzig, Ltd.*, 311 F. Supp. 3d 1265, 1277–78 (D. Utah 2018) (same). Ms. Robbins directly benefitted from her husband's Nu Skin Distributor Agreements, and her claims in this case are based on that contractual relationship. (Muir Decl. ¶ 15.) In fact, Ms. Robbins alleges that she herself "became a Brand Affiliate of Nu Skin in July 2002."[3] (Petition, Ex. A, Washington

---

3  "Brand Affiliate" is the current title for a Nu Skin distributor. (Muir Decl. ¶ 36.)

Complaint, ¶ 4.7.) Because she has directly benefited from her husband's Nu Skin distributorship—and, indeed even alleges that she *was* a distributor under her husband's Nu Skin Distributor Agreement—she cannot avoid the corresponding obligations of those contracts, including that her claims must be arbitrated. The Court should, therefore, also compel arbitration of Debra Robbins' claims in the Washington Complaint.

### E. The Court Should Enjoin Respondents from Prosecuting the Washington State Court Action While Arbitration Is Pending

In addition to compelling arbitration, the Court should enjoin Respondents from taking any further action to advance their state court claims while the arbitration is pending. It is well-established that a party may ask a federal court to compel arbitration notwithstanding the existence of an earlier-filed state court action addressing the same subject matter. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 21–22 (1983). And where such motions are granted, courts will typically enjoin any further prosecution of the state court actions. *See, e.g.*, *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 894 (6th Cir. 2002); *Aptim Corp. v. McCall*, 888 F.3d 129, 145 (5th Cir. 2018). Accordingly, in addition to compelling arbitration, this Court should enjoin Respondents from engaging in any further prosecution of the Washington Action.

### CONCLUSION

For the reasons stated above, this Court should enter an order compelling arbitration of all claims asserted by Respondents in the Washington Complaint, and enjoining Respondents from taking any further action in support of the Washington Action until such arbitration is complete.

DATED this 2nd day of December, 2021.

                              JONES WALDO HOLBROOK & McDONOUGH PC

                              /s/ Lewis M. Francis
                              Lewis M. Francis
                              *Attorney for Nu Skin Petitioners*