## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NU SKIN ENTERPRISES, INC. a Delaware corporation; and PHARMANEX, LLC, a Delaware limited liability company, <br><br> Petitioners, <br><br> v. <br><br> EARNEST L. RAAB, D.C., d/b/a SUCCESS TO SIGNIFICANCE LLC, a Washington LLC; MICHAEL ULRICK; LARRY C. WIEBER and ROSE WEIBER, d/b/a TEST FOR NUTRITION OF WASHINGTON, LLC, a Washington LLC; MAX and DEBRA ROBBINS; TONI RAGSDALE, d/b/a RAGSDALE & COMPANY LLC, an Oklahoma LLC; WAYNE MATECKI, LAC and AMY L. MATECKI, M.D., d/b/a DR. AMY'S INTEGRATIVE MEDICINE, INC., a California corporation <br><br> Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING RESPONDENTS' MOTION TO DISMISS** <br><br> Case No. 2:21-cv-00709-RJS-CMR <br><br> Chief Judge Robert J. Shelby <br><br> Magistrate Judge Cecilia M. Romero |

This case concerns whether Respondents may be compelled to resolve, through arbitration in Utah, an underlying legal action against Petitioners currently pending before the State of Washington Superior Court in Spokane County (the Washington state court). Petitioners Nu Skin Enterprises, Inc. and Pharmanex, LLC (collectively, Nu Skin) brought this action, pursuant to § 4 of the Federal Arbitration Act (FAA), petitioning this court for an order directing Respondents to arbitrate their claims and enjoining Respondents from continuing to prosecute

the underlying dispute in the Washington state court.[1]  Now before this court are Respondents'

Motion to Dismiss[2] and Petitioners' Motion to Compel Arbitration.[3]  For the following reasons,

Respondents' Motion to Dismiss is GRANTED and Petitioners' Motion to Compel Arbitration is

DENIED.

## BACKGROUND

At the motion to dismiss stage, the court accepts as true Petitioners' well-pleaded factual

allegations and views them in the light most favorable to Petitioners.[4]  The following background

facts are drawn from the Petition to Compel Arbitration and to Enjoin Respondents' Prosecution

of State Court Action (the § 4 Petition).[5]

Nu Skin Enterprises, Inc. markets beauty and nutritional products in the United States

and worldwide through a direct-sales, multi-level marketing network of independent contractor

distributors.[6]  Pharmanex, LLC is indirectly owned and controlled by Nu Skin Enterprises, Inc.[7]

All Respondents, except for Debra Robbins, are current Nu Skin distributors.[8]  Debra Robbins is

the spouse of Respondent Max Robbins, a long-time Nu Skin distributor.[9]

---

[1] Dkt. 1-1, *Petition to Compel Arbitration and to Enjoin Respondents' Prosecution of State Court Action* (the § 4 Petition) ¶¶ 54–61.  Pursuant to § 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

[2] Dkt. 29.

[3] Dkt. 3.

[4] *See Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011).

[5] Dkt. 1-1.

[6] *Id.* ¶ 15.

[7] *Id.* ¶ 16.

[8] *Id.* ¶ 20.

[9] *Id.* ¶ 21.

Respondents Earnest Raab, Michael Ulrick, Larry and Rose Weiber, Max Robbins, Toni Ragsdale, and Wayne and Amy L. Matecki each entered into written Distributor Agreements with Nu Skin.[10]  Each Distributor Agreements contains an arbitration provision providing:

> THIS CONTRACT IS SUBJECT TO ARBITRATION.  UTAH WILL BE THE EXCLUSIVE VENUE FOR ARBITRATION OR ANY OTHER RESOLUTION OF ANY DISPUTES ARISING UNDER OR RELATED TO THIS CONTRACT. The place of origin of this Contract is the State of Utah, USA, and it will be governed by, construed in accordance with, and interpreted pursuant to the laws of Utah, without giving effect to its rules regarding choice of laws.  The exclusive venue for any and all disputes will be in Salt Lake County, Utah.  I consent to the personal jurisdiction of any courts within the State of Utah and waive any objection to improper venue.[11]

The Distributor Agreements define "Dispute" as:

> [A]ny and all past, present or future claims, disputes, causes of action or complaints, whether based in contract, tort, statute, law, product liability, equity, or any other cause of action, (i) arising under or related to this Contract, (ii) between other Distributors and me arising out of or related to a Distributorship, or our business relationships as independent contractors of [] Nu Skin, (iii) between Nu Skin and me, (iv) related to Nu Skin or its past or present affiliated entities, their owners, directors, officers, employees, investors, or vendors, (v) related to the Nu Skin products, (vi) regarding Nu Skin's resolution of any other matter that impacts my Distributorship, or that arises out of or is related to the Company's business, including my disagreement with Nu Skin's disciplinary actions or interpretations of the Contract.[12]

By entering into Nu Skin Distributor Agreements, and continuing to act as Nu Skin distributors, Respondents also accepted and agreed to be bound by Nu Skin's Policies & Procedures.[13]  The currently applicable Policies & Procedures are the 2018 Policies & Procedures (the 2018 Policies).[14]  The 2018 Policies provide: "YOU AND THE COMPANY

---

[10] *Id.* ¶ 22.

[11] *Id.*; *see also, e.g.,* Dkt. 4-10, *2017 Form Distributor Agreement* at 4.

[12] Dkt. 1-1 ¶ 23; *see also, e.g.,* Dkt. 4-10 at 4.

[13] Dkt. 1-1 ¶ 45.

[14] *Id.* ¶ 43.

AGREE THAT MANDATORY AND BINDING ARBITRATION IS THE SOLE MEANS TO RESOLVE ANY AND ALL DISPUTES.  YOU WAIVE ALL RIGHTS TO JURY OR COURT TRIALS TO RESOLVE A DISPUTE."[15]  The 2018 Policies also contain substantively the same definition of "Dispute" as the Distributor Agreements.[16]

On November 15, 2021, Respondents filed a Complaint (the underlying Complaint) in Washington state court against Petitioners and other defendants.  In the underlying Complaint, Respondents asserted claims alleging violations of Washington's Consumer Protection Act, Washington's Antipyramid Promotional Scheme Act, and the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, as well as common law claims for tortious interference with business expectancy, negligent misrepresentation, vicarious liability, and injunctive relief.[17] Petitioners brought this action seeking to enforce the terms of the Distributor Agreements, and the 2018 Policies as incorporated therein, to compel the arbitration of Respondents' underlying claims.[18]

<u>**PROCEDURAL HISTORY**</u>

On December 1, 2021, Petitioners commenced this federal action by filing the § 4 Petition.[19]  The next day, they filed a Motion to Compel Arbitration and to Enjoin Respondents' Prosecution of State Court Action (Motion to Compel Arbitration).[20]  On January 26, 2022,

---

[15] *Id.* ¶ 47; *see also* Dkt. 4-12, *2018 Policies & Procedures* at 30.

[16] *See* Dkt. 1-1 ¶ 48.  The only changes to the definition of "Disputes" are renaming "Distributors" as "Brand Affiliates," "Distributorship" as "Brand Affiliate Account," and "Nu Skin" as "the Company."

[17] *Id.* ¶ 14; *see also* Dkt. 2, *underlying Complaint*.

[18] Dkt. 1-1 ¶¶ 50–61.

[19] *Id.*

[20] Dkt. 3.

Respondents filed their Opposition to Petitioners' Motion to Compel Arbitration[21] and a Motion to Dismiss the § 4 Petition.[22]  On February 9, 2022, Petitioners filed their Reply in Support of their Motion to Compel Arbitration[23] and their Opposition to Respondents' Motion to Dismiss.[24] On March 10, Respondents filed Supplemental Authority to their Opposition to the Motion to Compel Arbitration.[25]  And on March 18, Respondents filed their Reply in Support of their Motion to Dismiss.[26]  On April 21, after receiving leave of the court, Petitioners filed a Sur-Reply Opposing Respondents' Motion to Dismiss.[27]

Respondents' case before the Washington state court proceeded contemporaneously with this action.  As this case arises from the Washington state court case, the court will outline a brief history of that proceeding.

On November 15, 2021, Respondents filed their underlying Complaint in Washington state court, bringing various common law and statutory claims described above.[28]  On December 20, 2021, Petitioners filed a Motion to Dismiss or, in the Alternative, Stay the Washington state court action.[29]  The Washington state court heard oral argument from the parties on March 4,

---

[21] Dkt. 28.

[22] Dkt. 29.

[23] Dkt. 31.

[24] Dkt. 32.

[25] Dkt. 37.

[26] Dkt. 38.

[27] Dkt. 42.

[28] Dkt. 2.

[29] Dkt. 38-2.

2022.[30]  And on March 8, the Washington state court issued its Order Denying the Motion to Dismiss or Stay.[31]

Currently before this court are Petitioners' Motion to Compel Arbitration[32] and Respondents' Motion to Dismiss.[33]  Finding the dispositive issue presented is legal in nature, and the outcome is settled on the record provided by the parties, the court concludes oral argument will not be helpful.  For the reasons described herein, the court now GRANTS Respondents' Motion to Dismiss and DENIES Petitioners' Motion to Compel Arbitration.

## LEGAL STANDARD

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms: facial attacks and factual attacks.[34]  A facial attack challenges the sufficiency of the complaint, while a factual attack presents additional evidence.[35]  Respondents bring a facial attack.  In evaluating a facial attack, the court "must accept the factual allegations in the complaint as true,"[36] and "apply a standard patterned on Rule 12(b)(6)."[37]

Under Rule 12(b)(6), a court must dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."[38]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[30] Dkt. 38-5, *Order Denying Petitioners' Motion to Dismiss* at 3.

[31] *Id.*

[32] Dkt. 3.

[33] Dkt. 29.

[34] *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022).

[35] *Muscogee (Creek) Nation v. Okla. Tax. Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

[36] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

[37] *Garling v. EPA*, 849 F.3d 1289, 1293 n.3 (10th Cir. 2017).

[38] Fed. R. Civ. P. 12(b)(6).

on its face."[39]  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40]  While plausibility does not equate to probability, it "asks for more than a sheer possibility that a defendant has acted unlawfully."[41]

When evaluating a motion to dismiss, the court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff."[42]  In doing so, the court will not "weigh potential evidence that the parties might present at trial, but [will] assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[43]  "Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide [defendants] fair notice of what the . . . claim is and the grounds upon which it rests."[44]

## ANALYSIS

### 1. Subject Matter Jurisdiction

In considering whether the court has jurisdiction to grant the requested relief under a § 4 petition, the Supreme Court has instructed it to 'look through' the petition "to determine whether it is predicated on an action that 'arises under' federal law[.]"[45]  This approach "permits a § 4 petitioner to ask a federal court to compel arbitration without first taking the formal step of

---

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[40] *Id.*

[41] *Id.*

[42] *Jordan-Arapahoe, LLP*, 633 F.3d at 1025 (citation omitted).

[43] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[44] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

[45] *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009) (internal quotation marks in original).

initiating or removing a federal-question suit—that is, without seeking federal adjudication of the very questions it wants to arbitrate rather than litigate."[46]  Applying the 'look through' approach, the question at hand is whether the court would have subject matter jurisdiction over the underlying substantive controversy between the parties, although resolution of that controversy is not before the court.[47]

Here, the underlying substantive controversy between the parties is comprised of Respondents' claims in the underlying Washington state court Complaint—statutory claims under RICO, the Washington Consumer Protection Act, and the Washington Antipyramid Promotional Scheme Act, as well as common law claims for tortious interference with business expectancy, negligent misrepresentation, vicarious liability, and injunctive relief.[48]  'Looking through' to Respondents' underlying Complaint, this court would have original jurisdiction over Respondents' RICO claims and supplemental jurisdiction over Respondents' state-law claims.[49]

Respondents do not dispute that this court would have subject matter jurisdiction over their underlying RICO claims.[50]  Rather, they argue this court should decline to exercise supplemental jurisdiction over their Washington state-law claims pursuant to 28 U.S.C. § 1367(a) because they "raise[] a novel or complex issue of [s]tate law," namely the interpretation of Washington's Antipyramid Promotional Scheme Act (Antipyramid Act).[51]  Respondents argue "the State has a clear interest in seeing its law interpreted and applied by its own courts

---

[46] *Id.* at 65.

[47] *See id.* at 62–63.

[48] Dkt. 1-1 ¶ 14; *see also* Dkt. 2, *underlying Complaint*.

[49] *See* 18 U.S.C. § 1964; 28 U.S.C. § 1367(a).

[50] *See* 28 U.S.C. § 1331; 18 U.S.C. § 1964.

[51] Dkt. 29 at 7–8 (quoting 28 U.S.C. § 1367(c)(1)).

rather than having foreign courts (and arbitrators) potentially get it wrong and obstruct [] the State's ability to enforce its own laws."[52]

Petitioners respond that whether Respondents' claims raise novel issues of state law is not pertinent to whether this court should decline to exercise its supplemental jurisdiction because "the only issue before the [c]ourt is whether the parties entered into a valid arbitration provision."[53] The claims Respondents brought under Washington state law are not before the court in this proceeding.[54] Further, Petitioners assert "Respondents' argument on this point would lead to [the] nonsensical result" of this court determining whether the parties agreed to arbitrate their RICO claims, and presumably the state-law claims which do not raise novel issues, and leaving a Washington state court to determine whether the parties must arbitrate the Antipyramid Act and related state-law claims.[55] The court agrees with Petitioners.

This court's jurisdiction is based on 'looking through' the § 4 Petition to Respondents' underlying substantive claims and asking whether, save for the arbitration agreement, it would have jurisdiction over those claims.[56] But resolution of the merits of those claims is not before the court. The only question for this court to address is whether the parties agreed to arbitrate the claims currently pending in Washington state court. Respondents argue Washington has an interest in interpreting novel issues of its own laws, rather than having such decisions rendered by a federal court of another state. But Respondents' state-law claims will not be resolved by this court. Were this court to reject Petitioners' Motion to Compel Arbitration, all of

---

[52] *Id.* at 8.

[53] Dkt. 32 at 13.

[54] *Id.*

[55] *Id.* at 14.

[56] *See* 9 U.S.C. § 4.

Respondents' claims would remain where they are presently pending—before the Washington state court.  And were this court to grant Petitioners' Motion to Compel Arbitration, Respondents' claims would be subject to arbitration, not substantively resolved by this court.

Respondents also articulate a concern with subjecting the Antipyramid Act claims to arbitration.  They assert Washington has an interest in adjudicating its own laws, rather than being subject to the decisions of arbitrators who may "get it wrong and obstruct [] the State's ability to enforce its own laws."[57]  Yet the FAA aims to "overcome judicial hostility to arbitration agreements and [] applies in both federal and state courts."[58]  The FAA preempts state law which would seek to exempt claims from arbitration.[59]  Thus, concern with potentially sending Antipyramid Act claims to arbitration is ultimately irrelevant to this court's exercise of supplemental jurisdiction and is preempted by the FAA's articulation of a strong federal policy in favor of arbitration.

### 2.  Venue

Next, Respondents assert this court is an improper venue because a Washington court would be "best situated to apply Washington's interest in applying its own laws to the arbitration

---

[57] Dkt. 29 at 8.

[58] *Allied-Bruce Terminiz Cos., Inc. v. Dobson*, 513 U.S. 265, 273 (1995).

[59] *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341, (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."); *id.* at 352–53 (Thomas, J., concurring) ("If § 2 means anything, it is that courts cannot refuse to enforce arbitration agreements because of a state public policy against arbitration, even if the policy nominally applies to 'any contract.'  There must be some additional limit on the contract defenses permitted by § 2."); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) ("In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.").

agreement[.]"[60]  Petitioners respond that Utah is the proper venue for their Petition based on the forum selection clause in the parties' Distributor Agreements and case law interpreting FAA § 4.[61]  Respondents reply that venue is proper in Washington because a substantial part of the events giving rise to Respondents' underlying Complaint took place in Washington, Washington has a definite interest in enforcing its own consumer protection laws, and the Washington state court has already ruled that Washington is a proper venue for Respondent's underlying Complaint.[62]

Respondents' arguments miss the mark of addressing whether this court is a proper venue for considering the § 4 Petition.  The question before this court is whether venue is proper for consideration of the § 4 Petition—not whether this court would be a proper venue for Respondents' underlying Complaint.  That the Washington state court determined it is a proper venue to consider Respondents' underlying Complaint says nothing of whether this court is a proper venue to consider the § 4 Petition.  The Washington state court acknowledged as much in ruling that the state court case "can coexist while the Utah Federal Court decides the Petition to Compel Arbitration before it[.]"[63]

---

[60] Dkt. 29 at 4.  Respondents also briefly argue this court should be precluded from determining the issue of venue because "the propriety of the Washington forum" has already been litigated by the parties and decided by the Washington state court.  *See* Dkt. 38 at 6; Dkt. 38-5, *Order Denying Defendants' Motion to Dismiss* at 4.  However, the question of whether the Washington state court is a proper venue for the claims brought in the underlying Complaint is not the same issue as whether this court is a proper venue for the instant Petition.  Because issue preclusion only applies when "the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding," this court is not precluded from evaluating whether it is a proper venue for considering the § 4 Petition.  *See Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 96 P.3d 957, 961 (Wash. 2004).

[61] Dkt. 32 at 6–9.

[62] Dkt. 38 at 7–8.

[63] Dkt. 38-5 at 4.

The Tenth Circuit has held that, "where the parties agreed to arbitrate in a particular forum[,] only a district court in that forum has authority to compel arbitration under § 4."[64] "Any other result [would] render[] meaningless the § 4 mandate that arbitration and the order compelling arbitration issue from the same district."[65]  This rule is not a matter of jurisdiction, but of proper venue.[66]

Here, the parties' Distributor Agreements provide that, "[t]he exclusive venue for any and all disputes will be in Salt Lake County, Utah."[67]  While Respondents contest the applicability of the arbitration provision to the underlying Complaint, they do not counter Petitioners' assertion that, where applicable, arbitration would take place in Utah.[68]  Thus, as the parties' Distributor Agreements specify arbitration in Utah, only a district court in Utah has authority to consider the § 4 Petition.  Venue is therefore proper in this forum.

### 3.  Issue Preclusion

Respondents also argue this court is collaterally estopped from determining "the applicability of the arbitration agreement" to the claims raised by Respondents' underlying Complaint because this issue was already resolved by the Washington state court.[69]  Petitioners

---

[64] *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219–20 (10th Cir. 2005); *see also id.* at 1220 ("[A] district court lacks authority to compel arbitration in other districts, or in its own district if another has been specified.").

[65] *Id.* at 1220.

[66] *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1051–52 (10th Cir. 2006) (holding that the rule announced in *Ansari* is not jurisdictional but "one of venue which the parties . . . waived by not raising the issue before the district court."); *see also Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1151–52 (10th Cir. 2014) (summarizing and reinforcing the Tenth Circuit's precedent interpreting § 4).

[67] Dkt. 32 at 6; *see also, e.g.,* Dkt. 4-10 at 4 ("UTAH WILL BE THE EXCLUSIVE VENUE FOR ARBITRATION OR ANY OTHER RESOLUTION OF ANY DISPUTES ARISING UNDER OR RELATED TO THIS CONTRACT. . . .  The exclusive venue for any and all Disputes will be in Salt Lake County, Utah.  I consent to the personal jurisdiction of any courts within the State of Utah and waive any objection to improper venue.").

[68] *See generally* Dkt. 29 at 3–7; Dkt. 38 at 7–8.

[69] Dkt. 38 at 6.

dispute the preclusive effect of the Washington state court's Order.[70]  Petitioners argue that the issue decided by the Washington court is not the same as that before this court and that preclusion would be unjust to Nu Skin.[71]  For the reasons stated below, the court agrees with Respondents.

Collateral estoppel, or issue preclusion, "prevents a second litigation of issues between the parties, even though a different claim or cause of action is asserted."[72]  This doctrine is borne of the Full Faith and Credit Statute,[73] which "obliges federal courts to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment."[74]  Thus, this court's examination of the preclusive effect of a Washington state court Order must proceed under Washington law.[75]

In Washington,

[f]or collateral estoppel to apply, the party seeking application of the doctrine must establish that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.[76]

---

[70] *See* Dkt. 42 at 4–11.

[71] *Id.*

[72] *Christensen*, 96 P.3d at 961.

[73] 28 U.S.C. § 1738.

[74] *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 287 (1984).

[75] *See* Dkt. 38 at 5; Dkt. 42 at 4 n.2.

[76] *Christensen*, 96 P.3d at 961 (internal citations omitted).

Furthermore, "the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue" and the issue must "have actually been litigated and necessarily and finally determined in the earlier proceeding."[77]

It is undisputed that Petitioners, the parties against whom collateral estoppel is asserted, are parties to the Washington state court proceedings.[78]  Petitioners briefly assert that the Washington state court Order was not a judgment on the merits and has no preclusive impact because "Nu Skin is seeking discretionary review of the [] [O]rder with the Washington Court of Appeals."[79]  However, Petitioners provide no legal authority for their assertion,[80] and applicable precedent suggests a Washington court would hold the opposite.

In Washington, "an appeal does not suspend or negate the res judicata or collateral estoppel aspects of a judgment entered after trial in the superior courts."[81]  Rather, "a judgment or administrative order becomes final for res judicata purposes at the beginning, not the end, of the appellate process, although res judicata can still be defeated by later rulings on appeal."[82]  Because the decision of the Washington state court was not tentative or conditional, was delivered after the parties had been fully heard, and is sufficiently final to be eligible for

---

[77] *Id.* (internal citations omitted).

[78] *See* Dkt. 38 at 5; *see generally* Dkt. 42.

[79] Dkt. 42 at 11.  Petitioners also assert the Washington court Order was not a judgment on the merits because "no motion to compel arbitration was filed by Nu Skin" in the Washington state court.  However, this argument appears directed toward the absence of claim preclusion, based on the difference in the claims before the Washington state court and this court, rather than the question of issue preclusion.  Claim preclusion "is intended to prevent relitigation of an entire cause of action," whereas issue preclusion "is intended to prevent retrial of one or more of the crucial issues or determinative facts determined in previous litigation."  *Christensen*, 96 P.3d at 960–61.  While the question of arbitrability has not been addressed by the Washington state court, Respondents contend the Washington court has conclusively determined facts or issues integral to that question.  *See* Dkt. 38 at 4–6.

[80] *See* Dkt. 42 at 11.

[81] *Nielson by and through Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 956 P.2d 312, 316 (Wash. 1998) (internal citation omitted).

[82] *Lejeune v. Clallam Cnty.*, 823 P.2d 1144, 1149 (Wash. Ct. App. 1992).

discretionary review, this court will consider it a judgment on the merits such that issue preclusion may apply.[83]

> ### a. The issue decided by the Washington state court is identical to an issue presented in this proceeding.

To satisfy the first element of issue preclusion, the issue must not only be the same as was decided in the earlier proceeding but also must have "actually been litigated and necessarily and finally determined in the earlier proceeding."[84]

Respondents argue this element is satisfied because the issue whether the arbitration agreement covers the underlying Complaint, "especially as it relates to whether [the underlying Complaint] is a dispute arising out of or related to the contract," is core to the ruling sought here by Petitioners and has already been decided by the Washington state court.[85]  Petitioners respond that the issue before the Washington state court was the applicability and enforceability of the forum selection clause in the Distributor Agreements, whereas the question here is the "scope and enforceability of the arbitration provision under the FAA."[86]  Furthermore, the Washington court's decision considered state public policy applicable to forum selection clauses whereas the applicability of the arbitration provision is guided by the presumption of arbitrability under the FAA.[87]  Therefore, Petitioners argue, the issues before this court and the Washington state court are not identical.  The court agrees with Respondents to the extent that the Washington state

---

[83] *See Cunningham v. State*, 811 P.2d 225, 228 (Wash. Ct. App. 1991) (outlining factors relevant to whether a judgment is sufficiently final for purposes of issue preclusion).

[84] *Christensen*, 96 P.3d at 961 (internal citation omitted).

[85] Dkt. 38 at 6; *see id.* at 4.

[86] Dkt. 42 at 6; *see id.* at 4–6.

[87] *Id.* at 6–9.

court has already decided one issue necessary to this court's decision—whether the underlying Complaint is a "'Dispute' within the meaning of the Contract."[88]

Petitioners raised the issue of whether the claims in the underlying Complaint constitute a "Dispute" within the meaning of the parties' contract both before the Washington state court and this court.[89] Before the Washington state court, Petitioners argued for dismissal of the underlying Complaint because the claims asserted therein fell within the Distributor Agreements' broad definition of "Disputes" and were therefore subject to the exclusive forum selection clause mandating resolution in Utah.[90] Respondents retorted that the definition of "Disputes" did not encompass the claims in the underlying Complaint because the definitional requirements should be read conjunctively and because the claims did not arise out of or relate to the Distributor Agreements.[91] Petitioners disputed both contentions.[92] Before this court, Petitioners advance the same arguments that the definition of "Disputes" clearly covers Respondents' claims in the

---

[88] Dkt. 38-5 at 4.

[89] *Compare* Dkt. 32 at 10–12 (discussing the arbitration agreement's broad coverage of "Disputes") *with* Dkt. 38-2 at 15–16 (arguing that Respondents' underlying claims "fall within the definition of a 'dispute,' which they agreed to resolve in Utah") *and* Dkt. 38-4 at 7–9 (discussing the "indisputably broad" definition of "Dispute" under the parties' Distributor Agreements and its applicability to Respondents' claims in the underlying Complaint).

[90] *See* Dkt. 38-2 at 15–15.

[91] *See* Dkt. 38-3 at 9–11.

[92] *See* Dkt. 38-4 at 7–9.

underlying Washington state court Complaint.[93]  Respondents argue that the Washington state court has already "ruled that Respondents['] underlying claims are not a 'dispute' within the contractual definition and, consequently, the arbitration agreement is not applicable here."[94]

The issue was thoroughly briefed before the Washington court, with the parties each advocating for their interpretation of the Distributor Agreements' definition of "Disputes" and whether it encompasses the claims raised in the underlying Washington state court Complaint. Having considered the parties' briefing, and after hearing oral argument, the Washington state court concluded that "[t]he arbitration agreement is inapplicable to the present matter because this is not a 'Dispute' within the meaning of the Contract."[95]

Petitioners nevertheless argue this decision by the Washington state court should not be given preclusive effect because the application of a forum selection clause and an arbitration

---

[93] *See* Dkt. 32 at 10–12.  Petitioners also argue this court should not interpret the definition of "Disputes" because, "as indicated in the Petition and the Motion to Compel Arbitration, questions regarding the interpretation of the Distributor Agreement are for the arbitrator to decide."  *Id.* at 9–10.  Accordingly, Petitioners' Motion to Compel Arbitration argues that "disputes about the scope of the arbitration provision[]" are for the arbitrator to decide because the contract requires that "any and all disputes arising under or related to th[e] Contract be submitted to arbitration."  Dkt. 3 at 8 (internal quotation marks and ellipses omitted).  "[T]he Supreme Court has held that when parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including whether their agreement covers a particular controversy."  *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).  But the Supreme Court has instructed that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).  Here, the requirement that "any and all . . . disputes . . . arising under or related to th[e] Contract" be submitted to arbitration does not constitute clear and unmistakable evidence that the parties agreed to delegate the question of arbitrability to an arbitrator.  *Cf. Belnap*, 844 F.3d at 1281 (finding clear and unmistakable evidence the parties agreed to arbitrate arbitrability where their agreement provided that: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.").

[94] Dkt. 38 at 8.

[95] Dkt. 38-5 at 4.

agreement are evaluated under different standards and presumptions.[96] The FAA was enacted "in response to widespread judicial hostility to arbitration agreements" and reflects "both a liberal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."[97] The Supreme Court has instructed that, "[i]n line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms."[98] Thus, while the FAA imposes a strong federal policy favoring arbitration, that policy does not supersede or obviate the terms of a contract and its interpretation in accordance with accepted principles of contract law.

The Washington state court has already interpreted the term "Disputes" and determined that the underlying Complaint before it does not fall within its definition. Although different law applies to the forum selection clause and arbitration agreement, both provisions use the same contractually defined term, "Disputes." Petitioners have not shown that the term "Disputes" can embrace one interpretation when used in relation to the forum selection clause and another when used in connection to the arbitration provision. And, in briefing the issue before the Washington state court, the parties did not advocate for their diverging interpretations of the term "Disputes" based on Washington's public policy regarding forum selection clauses or the FAA's policy favoring arbitrability. Rather, their respective interpretations were premised on conflicting applications of contract principles.[99] Because the Washington state court has already defined "Disputes" as a matter of contract interpretation, this court is precluded from revisiting the issue.

---

[96] *See* Dkt. 42 at 6–9 (contrasting application of public policy to the interpretation of forum selection clauses with the strong presumption of arbitrability under the FAA).

[97] *AT&T Mobility LLC*, 563 U.S. at 339 (internal citations omitted).

[98] *Id.* (internal citations omitted).

[99] *See* Dkt. 38-2 at 15–16; Dkt. 32-3 at 9–11; Dkt. 38-4 at 7–9.

Petitioners further contend that "[a]ny determination by the Washington court regarding the arbitration provision's scope or enforceability could not be essential to the Washington court's order denying Nu Skin's motion to dismiss for improper venue, and the issue was therefore not 'necessarily decided[.]'"[100]  In the alternative, they argue "the Washington court's order lacks clarity" and should therefore be construed narrowly against preclusion.[101]

"For a judgment to be conclusive as to any given issue, that issue must have been actually determined and essential to the judgment."[102]  The Washington state court Order itself makes clear that the issue of whether the underlying Complaint falls within the Distributor Agreements' meaning of "Dispute" was actually determined.[103]  Furthermore, the Washington state court's edits to the Respondents' proposed order suggest the court did not consider the interpretation of "Dispute" to be merely an alternative basis for its holding.[104]  The Washington state court's Order is facially clear in its determination that the matter before it was "not a 'Dispute' within the meaning of the Contract."[105]  While this court cannot purport to know the Washington state court's unarticulated reasoning, its conclusion is evident.  Having been definitively determined

---

[100] Dkt. 42 at 9.

[101] *Id.* at 9–10.

[102] *Strand v. L.D. Trucking & Excavating, Inc.*, No. 45766-7-1, 2001 WL 372107, *4 (Wash. Ct. App. Apr. 16, 2001) (citing *Fluke Capital & Mgmt. Servs. Co. v. Richmond*, 724 P.2d 356, 360 (Wash. 1986)).

[103] Dkt. 38-5 at 4; c*f. Strand*, 2001 WL 372107 at *4 (finding factual issues were not necessarily determined in granting summary judgment); *Fluke Capital & Mgmt. Servs. Co.*, 724 P.2d at 360 (finding issues were not necessarily determined when they were abandoned in the parties' final set of amended pleadings and were not essential to any of the court's findings after trial); *Peterson v. Dept. of Ecology*, 596 P.2d 285, 289 (Wash. 1979) (finding issues were not necessarily determined where an administrative board's conclusions of law held that it lacked jurisdiction to adjudicate the issues).

[104] Dkt. 38-5 at 4 (striking the word "alternatively" before adopting the proposed order).

[105] *Id.*

by the Washington court, this court will not revisit the contractual definition of "Dispute" or its application to the underlying Complaint.

### b. Issue preclusion does not work an injustice on Petitioners.

Lastly, Petitioners argue issue preclusion should not apply because its application would work an injustice on Nu Skin.[106]  Petitioners assert they did not raise the issue of arbitrability before the Washington state court and it would prejudice Nu Skin if the Washington court's Order, on a motion to dismiss based on the forum selection clause, precluded consideration of the arbitrability of Respondents' claims.[107]  Respondents assert this element is satisfied because Nu Skin would suffer no injustice from the application of issue preclusion when "Nu Skin chose to bring its motion in Washington state court" and "if Nu Skin wanted to avoid the risk of an adverse ruling from Washington applying in this court, it simply could have deferred [] filing a motion in the Washington state court and answered the Complaint instead."[108]  The court agrees with Respondents.

The injustice element of issue preclusion "is generally concerned with procedural, not substantive irregularity."[109]  The party against whom issue preclusion is asserted "must have had a full and fair opportunity to litigate the issue in the earlier proceeding."[110]  "Accordingly, applying collateral estoppel may be improper where the issue is first determined after an

---

[106] Dkt. 42 at 11.

[107] *Id.*

[108] Dkt. 38 at 5.

[109] *Christensen*, 96 P.3d at 962; *see also id.* at 966 ("We reiterate that whether the decision in the earlier proceeding was substantively correct is generally not a relevant consideration in determining whether application of collateral estoppel would work an injustice.").

[110] *Id.* at 961.

informal, expedited hearing with relaxed evidentiary standards."[111]  Furthermore, the party

opposing preclusion "must have had interests at stake that would call for a full litigational

effort."[112]

     Here, the application of issue preclusion would not work an injustice on Petitioners

because they had a full and fair opportunity to litigate the interpretation of "Disputes," as defined

in the Distributor Agreements, before the Washington state court.  In fact, Petitioners themselves

filed the Motion to Dismiss which resulted in the Order they now seek to avoid.  Petitioners even

raised the issue of whether Respondents' claims fall within the definition of "Disputes" in both

their Motion to Dismiss before the Washington state court and their Opposition to Respondents'

Motion to Dismiss before this court.[113]  The Washington state court received full briefing on

Petitioners' Motion to Dismiss and rendered its decision based on the parties' evidence, briefing,

and oral arguments.[114]  There is nothing to suggest that the prior proceeding was informal,

expedited, or relaxed such that issue preclusion should not apply.

     And, Petitioners' interest in the Washington state court proceeding suggests they had

similar incentive to fully litigate the issue.  Had Petitioners' Motion to Dismiss in the

Washington action been granted, Petitioners would have been left to litigate only their Petition in

this forum.  Here, if Petitioners succeed in securing denial of Respondents' Motion to Dismiss,

---

[111] *Id.* at 962.

[112] *Butler v. Thomsen*, No. 76536-1-1, 2018 WL 6918832, at *4 (Wash. Ct. App. Dec. 31, 2018) (internal citation and quotation marks omitted); *see also Christensen*, 96 P.3d at 962 ("[D]isparity of relief may be so great that a party would be unlikely to have vigorously litigated the crucial issues in the first forum and so it would be unfair to preclude relitigation of the issues in a second forum.") (internal citation omitted).

[113] *Compare* Dkt. 38-2 at 15 *with* Dkt. 32 at 9–12.

[114] *See* Dkt. 38-5 at 3–4.

their Petition would remain for this court's consideration.[115]  Thus, the outcome of Petitioners'

success or failure in both this action and the prior action before the Washington state court is

substantially similar—success would bring Petitioners one step closer to securing arbitration of

the claims in the forum of their choosing, whereas failure would prolong the litigation of

Respondents' claims before the Washington state court.  Because Petitioners had full and fair

opportunity to litigate the issue before the Washington court, and had sufficiently similar

interests at stake in the prior proceeding, this court finds no procedural incongruity between the

prior action and the present such that issue preclusion would work an injustice on Petitioners.

    In summary, the Washington state court previously held that "[t]his is not a 'dispute'

within the meaning of the Contract."[116]  Because the same substantive issue was presented to this

court, the prior proceeding ended in a judgment on the merits, Petitioners here were party to the

earlier proceeding, and preclusion would not work an injustice on Petitioners, this court will not

revisit the issue already conclusively resolved by the Washington court.  Petitioners are

precluded from relitigating the question whether the underlying Complaint is a "Dispute" within

the meaning of the parties' Distributor Agreements.

### 4.        Rule 12(b)(6)

    Finally, Respondents argue the § 4 Petition should be dismissed because it fails to state a

claim upon which relief can be granted.[117]  Petitioners respond that "the Petition states a claim

---

[115] Similarly, their Motion to Dismiss the Washington state court action having been denied, Petitioners have continued to litigate and defend against Respondents' claims before the Washington court.  And if Respondents' Motion to Dismiss the § 4 Petition before this court is granted, the parties will be left to litigate or seek other resolution as they see fit before the Washington state court.

[116] Dkt. 38-5 at 4.

[117] Dkt. 29 at 4–7.

for relief because there is an agreement to arbitrate all claims between Respondents and Nu Skin, and Respondents' claims are covered by that agreement."[118]  The court agrees with Respondents.

"Under the FAA, 'arbitration is a matter of contract,' and courts must 'place[] arbitration agreements on an equal footing with other contracts, and . . . enforce them according to their terms."[119]  The Supreme Court has "long recognized and enforced a liberal policy favoring arbitration agreements" under the FAA.[120]  However, "a party cannot be required to submit to arbitration any dispute which [the party] has not agreed [] to submit."[121]

The parties' Distributor Agreements contain an arbitration provision providing, in relevant part: "this Contract is subject to arbitration.  Utah will be the exclusive venue for arbitration or any other resolution of any Disputes arising under or related to this Contract."[122]  Thus, pursuant to the terms of the parties' agreement, "any Disputes arising under or related to this Contract" shall be subject to arbitration in Utah.  But because the underlying Complaint is not a "Dispute" within the meaning of the Contract, it does not fall within the scope of the arbitration agreement.[123]  Respondents therefore cannot be compelled to submit their claims to arbitration.  Accordingly, Petitioners have not stated a claim for relief which may be granted.

---

[118] Dkt. 32 at 3, 9–12.

[119] *Belnap*, 844 F.3d at 1280 (quoting *Rent-A-Center, W., Inc.*, 561 U.S. at 67).

[120] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal citation and quotation marks omitted).

[121] *Id.* (internal citation and quotation marks omitted); *see also id.* ("The question whether the parties have submitted a particular dispute to arbitration . . . is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'") (quoting *AT&T Techs., Inc.*, 475 U.S. at 649).

[122] Dkt. 1-1 ¶ 22 (emphasis removed); *see also, e.g.,* Dkt. 4-10 at 4.

[123] *See* Dkt. 38-5 at 4.

## CONCLUSION

For the foregoing reasons, Respondents' Motion to Dismiss is GRANTED.  For the same reasons, Petitioners' Motion to Compel Arbitration is DENIED.  The Clerk of Court is directed to close the case.

SO ORDERED this 13th day of June 2022.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge